# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| ROBERT HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:20-cv-04014-DCN |
| vs. ) | |
| ) | **ORDER** |
| MAERSK A/S, CO., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The following matter is before the court on defendant Maersk A/S, Co.'s ("Maersk") motion to summary judgment, ECF No. 11. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

On October 30, 2017, plaintiff Robert Holmes ("Holmes") was employed as a longshoreman and, as part of his work duties, went into the hold of the M/V MSC KINGSTON (the "Vessel") at the Wando Welch Container Terminal in Charleston Harbor, South Carolina. Specifically, Holmes was a refrigerator mechanic whose job duties included the maintenance and inspection of refrigerated containers coming in and out of the Charleston Harbor. Holmes alleges that he was exposed to the build-up of caustic fumes caused by improperly stored cow hides while in the hold of the Vessel. According to Maersk, the Vessel was owned by Navarino Maritime Corporation ("Navarino") of Liberia. Maersk was the long-term time charterer of the Vessel pursuant to the terms of a time charter party entered into with Navarino in 2001 (the "Charter Party"). Holmes alleges that he suffered physical and mental injuries, including reactive airway dysfunction syndrome, as a result of this exposure.

1

On October 29, 2020, Holmes filed a complaint against Maersk in the Charleston County Court of Common Pleas. ECF No. 1-1. Maersk removed the action to this court on November 17, 2020. ECF No. 1. Holmes asserts causes of action against Maersk for negligence and gross negligence under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). On November 16, 2021, Maersk filed a motion for summary judgment. ECF No. 11. On December 14, 2021, Holmes responded, ECF No. 14, and on December 20, 2021, Maersk replied, ECF No. 15. As such, the motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

Maersk moves for summary judgment on Holmes's negligence and gross negligence claims. Negligence is an actionable wrong under general maritime law. Leathers v. Blessing, 105 U.S. 626, 630 (1882). A plaintiff's cause of action for negligence is to be determined under the principles of maritime negligence rather than common law negligence. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406 (1953). The elements of a maritime negligence cause of action include: (1) the existence of a duty required by law that obligates a person to conform to a certain standard of conduct in order to protect another against unreasonable risks of harm; (2) a breach of the said duty by engaging in conduct that falls below the applicable standard; (3) a causal connection between the improper conduct and the resulting injury; and (4) an actual loss or injury to the plaintiff due to the improper conduct. Schumacher v. Cooper, 850 F. Supp. 438, 447 (D.S.C. 1994). The plaintiff has the burden of proof of these elements in a maritime negligence cause of action. Id.

Maersk argues that summary judgment is warranted for two reasons. First, Maersk argues that it did not own, operate, control, or have any personnel aboard the Vessel and therefore did not owe Holmes a duty under maritime law. Second, Maersk argues that Holmes has not offered any evidence of causation of his alleged injuries for which Maersk could be liable. The court addresses each argument in turn below.

**A. Duty**

Maersk argues that, as time charter[1] of the Vessel, it did not owe any duty to Holmes as a longshoreman or mechanic. Specifically, Maersk explains that it had the right as charterer to nominate ports of call and have its customers' cargo loaded aboard the Vessel. Maersk maintains that it did not, however, have any personnel aboard the Vessel or have any role in the Vessel's maintenance or operations, including cargo operations. It likewise avers that it had no responsibility with respect to supervising stevedores who load and unload cargo or referring mechanics. Therefore, it argues that it had no duty to Holmes in connection with his injuries under maritime law.[2]

By failing to provide any argument on the matter, Holmes seemingly concedes that Maersk did not owe him a duty under general maritime law. However, Holmes contends that Maersk contractually assumed liability for Holmes's injuries under the Charter Party, and he is owed a duty by Maersk as a third-party beneficiary of the Charter Party. Specifically, Holmes argues that Maersk "contractually assumed all liabilities for claims arising in connection with the goods and containers carried aboard the [Vessel]" pursuant to the Charter Party. ECF No. 14 at 2. The Charter Party provides:

> Charterer's Responsibilities: Except as elsewhere provided in this Charter Party and without prejudice to the Charterers' right to initiate recovery

---

[1] "A time charter is an agreement by which the carrier agrees to carry freight for the charterer for a period of time. In return, the charterer tenders freight to the vessel and pays the charter hire. No property interest in the vessel passes to the charterer, so the control of the vessel's operation and navigation remains with the carrier." Habrat v. United States, 310 F. Supp. 618, 620 (W.D. Pa. 1970)

[2] Specifically, Maersk explains that three distinct duties are owed to longshoremen under general maritime law—turnover duty, active control duty, and duty to intervene—none of which Maersk claims applies to it. ECF No. 11 at 8–9 (citing Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156 (1981)). Because Holmes provides no argument as to the existence of any of these duties, the court need not address these duties in detail.

> against the Owners under clause 17, <u>the Charterers shall be responsible for all claims in respect of any liability or expense whatsoever or howsoever arising in connection with the goods and containers carried pursuant to this Charter Party or their carriage (even if such liability arises wholly or in part by reason of the act, neglect or default of the Owners or of such servant, agent or sub-contractor)</u>.

ECF No. 14-4 at 8 (emphasis added). It further provides that Maersk is responsible for securing cargo inside the containers:

> Cargo inside Containers: Securing of cargo inside containers and/or flat and/or other unit loads to be entirely Charterer's concern and responsibility.

<u>Id.</u> at 15. Holmes argues that his claims arise "in connection with the goods and containers carried" pursuant to the Charter Party and that Maersk is therefore liable to him for those claims based on its assumption of liability and its explicit responsibility for securing cargo in the Charter Party. Citing South Carolina law rather than maritime law, Maersk argues that "If a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person." ECF No. 14 at 3 (citing <u>Windsor Green Owners Ass'n v. Allied Signal</u>, 605 S.E.2d 750 (S.C. Ct. App. 2004)). Holmes submits that the Charter Party "makes clear to [Holmes] and others with potential claims arising from the goods and containers for whom to look to for due recompense from their resulting injuries," and therefore he may enforce the contract as an intended third-party beneficiary under the Charter Party. <u>Id.</u>

Maersk, in turn, argues that the Charter Party merely addresses contractual liability and indemnity issues between the Vessel's owner and Maersk as charterer. According to Maersk, that allocation of risk between these parties does not affect the duties owed by the vessel's owner or charterer to third parties, including longshoremen.

5

Moreover, Maersk argues that the law in the Fourth Circuit and maritime law generally is clear that longshoremen are not third-party beneficiaries of charter parties.

In the main case cited by Maersk, the Fourth Circuit summarized applicable caselaw where courts held that charter parties do not create a contractual duty owed to longshoremen as third-party beneficiaries:

> In this circuit we have held in <u>Bernard v. U.S. Lines, Inc.</u>, 475 F.2d 1134 (4th Cir. 1973), that a longshoreman who was injured in the use of a land-based forklift owned by the charterer was not a third-party beneficiary of the charter party agreement because it "created no contractual duty to the longshoreman on the part of the United States, a time charterer." 475 F.2d at 1135, 1136. Similarly, in <u>Spence v. Mariehamns R/S</u>, 766 F.2d 1504 (11th Cir. 1985), a longshoreman who was injured by the stevedore's negligence in the unloading of the vessel was held not entitled to recover from the vessel under a charter party provision which provided that the "Charterers to load, stow and discharge the cargo at their expense under the supervision of the Captain." The Court held that the quoted language was not construed so that the vessel's "crew would take direct responsibility for supervising the discharge of cargo." 766 F.2d at 1507. It reasoned, as did <u>Bernard</u>, that the language made no mention of the longshoremen's safety, and the plaintiff had not presented extensive proof of such a duty. In <u>Carpenter v. Universal Star Shipping, S.A.</u>, 924 F.2d 1539, 1545 (9th Cir. 1991), the court held that charter party provisions that "stevedores ... shall be employed and paid for by charterers" and "charterer to load, stow, lash, secure, trim and discharge the cargo free of risks and expenses to owners" determined indemnity issues between the owner of the vessel and the charterer and did not inure to the benefit of a longshoreman who had been injured when he fell through a hole improperly left in the loading of a cargo of logs. The court held, as had <u>Spence,</u> that the charter party was a contract between the charterer and the ship owner and did not affect the duty owed to the longshoreman. It held that no language in the charter party created a duty on the ship owner to intervene to insure longshoremen's safety during cargo loading.

<u>Lincoln v. Reksten Mgmt.</u>, 354 F.3d 262, 268–69 (4th Cir. 2003). Following the line of cases before it, the Fourth Circuit in <u>Lincoln</u> found that the longshoremen's safety or concomitant care was not mentioned in the charter party at issue and therefore held that the charter party did not create a duty on which the plaintiff could sue. <u>Id.</u> at 269.

6

The court finds that Holmes has not created a genuine issue of material fact as to whether he was a third-party beneficiary of the Charter Party. The sole case Holmes cites to support his argument, Windsor, 605 S.E.2d at 750, is a South Carolina case, and "[i]t is well established that a charter agreement is a maritime contract whose interpretation is subject to the principles of federal maritime law," Greenslate v. Tenneco Oil Co., 623 F. Supp. 573, 575 (E.D. La. 1985) (citing G. Gilmore & C. Black, The Law of Admiralty 196 (1975); Otto Candies, Inc. v. McDermott International, Inc., 600 F. Supp. 1334, 1335 (E.D. La. 1985) (explaining that a charter party is a maritime contract whose interpretation and construction is governed by maritime law)); see Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 31 (2004) ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."). Therefore, the authority Holmes cites is inapplicable to this case.³

Although Holmes mistakenly relies on state law, federal law nevertheless recognizes the validity of the third-party beneficiary theory of contracts. See Restatement (Second) of Contracts § 302 (1981); In re Frescati Shipping Co., Ltd., 718 F.3d 184, 198 (3d Cir. 2013), as amended (July 12, 2013) ("We typically look to the

---

³ Even if Windsor were applicable, it undermines rather than supports Holmes's argument. In Windsor, the South Carolina Court of Appeals held that a condominium home-owners association ("HOA") was not a third-party beneficiary of a lease agreement between owner and tenant absent the express intent by owner and tenant to confer a substantial benefit on the HOA. Windsor, 605 S.E.2d at 754. When the tenant damaged a common area of the condominium complex, the court found no intent in the lease agreement to benefit the HOA and therefore dismissed the HOA's claims. Id. The court explained, "We do not think a rental agreement between a condominium owner and the owner's tenant by which the tenant voluntarily agreed to pay the owner for any property damage caused by the tenant . . . goes so far as to make the homeowners association a third-party beneficiary of the contract, notwithstanding the fact that, by law, the tenant has the right to use the common areas." Id. (emphasis in original).

Restatement of Contracts for the federal law on third-party beneficiaries."). Under this theory, contracting parties may create rights in favor of a non-contracting third party by manifesting an intention to do so. Restatement, supra, § 302(b). Specifically, a third party may be a beneficiary to a contract of others where it is "appropriate to effect[ ] the intention of the parties," and "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Id. § 302(1)(b); see also Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993) (holding that a third-party beneficiary to a charter party "must show that 'the parties to that contract intended to confer a benefit on [it] when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to [it].'" (alterations in original) (quoting McPheeters v. McGinn, Smith & Co., 953 F.2d 771, 773 (2d Cir. 1992)).

      Holmes does not qualify as a third-party beneficiary under federal law. Holmes does not point to any express statement in the Charter Party that names him or any longshoremen as intended beneficiaries. Rather, he suggests that the court should imply intent from the Charter Party provisions because they provide that Maersk is responsible for securing cargo and that Maersk assumes all liability arising in connection with the goods and containers carried pursuant to the Charter Party. The court agrees with Maersk that, following Lincoln, such provisions do not render Holmes a third-party beneficiary or create any contractual duty owed to him as such. In this case, the Charter Party is a contract between the charterer and the ship owner. Holmes, as a longshoreman, is not a party to that agreement. Just like in many of the cases discussed in Lincoln, the Charter Party here provides that the charterer is responsible for securing cargo but does not

8

contain any language providing for longshoremen safety during cargo loading. Likewise, while the Charter Party notes that Maersk is liable for all claims arising in connection with goods or containers carried, this provision does not show an intent to benefit Holmes and other longshoreman; it shows only an intent for Maersk to indemnify the owner for any such liabilities. Holmes provides no authority or compelling argument to suggest that the court should read this provision as manifesting an intent to benefit Holmes as an injured longshoremen. Therefore, the court is persuaded by <u>Lincoln</u> and the cases discussed therein and finds that Holmes is not a third-party beneficiary to the contract as a matter of law. As such, the Charter Party did not create an additional duty owed by Maersk to injured longshoremen like Holmes as a matter of law. Because Holmes provides no other argument to show the existence of a duty owed by Maersk, the court finds that Holmes's negligence/gross negligence claims against Maersk fail at this element and grants summary judgment on those claims in Maersk's favor.

### B. Causation

Alternatively, Maersk argues that even if Holmes created a genuine issue of material fact as to the existence of a duty, it is entitled to summary judgment because Holmes's negligence claims fail at the element of causation. Upon consideration, the court agrees.

Maersk argues that Holmes has presented no evidence that he was exposed to hazardous fumes aboard the Vessel or that, if he were exposed, those fumes were emitted from a particular cargo. In response, Holmes argues that his treating physician, Michael Spandorfer, M.D. ("Dr. Spandorfer"), opined that his exposure to the improperly stored cowhides caused his diagnosis of reactive airway dysfunction syndrome. In reply,

Maersk argues that Holmes has not disclosed Dr. Spandorfer as an expert witness as required by Fed. R. Civ. P. 26(a)(2) and (a)(2)(B) and this court's consent amended scheduling order, ECF No. 10.  It also argues that a review of Dr. Spandorfer's deposition testimony shows that he offers no testimony stating to a reasonable degree of medical certainty that Holmes's injury was caused by his alleged exposure to the cow hides.  He merely stated that "It could have been" the cause.  ECF No. 14-2, Spandorfer Depo. at 7. Dr. Spandorfer's statement is not sufficient for Holmes's claims to survive summary judgment on the issue of causation even if Holmes had timely disclosed Dr. Spandorfer as an expert witness.  See Fitzgerald v. Manning, 679 F.2d 341, 350–513 (4th Cir. 1982). (explaining that a reasonable degree of medical certainty requires specificity and that "the only evidence offered was that [the injury] was 'probably' caused [by defendant's breach,] and that is not enough"); Riggins v. SSC Yanceyville Operating Co., LLC, 800 F. App'x 151, 158 (4th Cir. 2020) (finding that an expert's causation testimony was insufficient to withstand summary judgment when she failed to demonstrate what degree of certainty she actually possessed in her causation opinions).  However, Holmes's failure to timely disclose Dr. Spandroger also precludes him from relying on Dr. Spandorfer's expert testimony on causation at the summary judgment stage.

Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose "the identity of any witness [they] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  Rule 26(a)(2)(B) further requires parties to produce written reports for any witness who is "retained or specially employed to provide expert testimony in the case" or "whose duties as the party's

employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The court refers to these witnesses as "retained experts."

> A retained expert's written report must contain, among other things:
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them . . . .

Id. The report must contain any opinions formed specifically in anticipation of litigation, or otherwise outside the normal course of a duty. See Sullivan v. Glock, Inc., 175 F.R.D. 497, 500 (D. Md. 1997).

Conversely, to the extent a witness's opinion is based on facts learned or observations made "in the normal course of duty," the witness is a hybrid and need not submit a Rule 26(a)(2)(B) report. Id. A party seeking to avoid producing an expert report bears the burden of demonstrating that the witness is a hybrid. Lee v. Valdez, 2008 WL 4287730 (N.D. Tex. Sept. 18, 2008); Cinergy Commc'ns v. SBC Commc'ns, 2006 WL 3192544, at *3 (D. Kan. Nov. 2, 2006); see Tokai Corp. v. Easton Enterprises, 632 F.3d 1358 (Fed. Cir. 2011) (upholding the district court's exclusion of testimony where proffering party failed to produce evidence that witness was a hybrid). Moreover, a witness can serve as a hybrid witness as to some opinions, but also serve as a retained expert as to others. Sullivan, 175 F.R.D. at 500.

Parties are nevertheless required under Rule 26(a)(2)(C) to file disclosures for the testimony their witnesses intend to offer as hybrid witnesses. Rule 26(a)(2)(C) presents a less onerous disclosure standard than Rule 26(a)(2)(B). Specifically, Rule 26(a)(2)(C) only requires the written report to disclose: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a

summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

The Federal Rules provide a sanction for failing to make a required disclosure. Rule 37 reads in pertinent part:

> Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). The advisory committee notes accompanying Rule 37 explain that exclusion of undisclosed expert evidence was intended to be "strong inducement for disclosure" and state that this remedy is available at the summary judgment stage. See Fed. R. Civ. P. 37(c) advisory committee's notes to 1993 amendment. District courts are afforded "wide latitude . . . to issue sanctions under Rule 37(c)(1)." Saudi v. Northrop Grumman Corp., 427 F.3d 271, 279 (4th Cir. 2005).

Although the advisory committee notes describe Rule 37 exclusion as an "automatic sanction," the plain language of the rule, as noted, provides that undisclosed evidence will not be excluded if the failure to disclose was harmless or substantially justified. See also Fed. R. Civ. P. 37(c) advisory committee's notes to 1993 amendment (explaining that these exceptions were included to "avoid unduly harsh penalties in a variety of situations"). The Fourth Circuit has articulated a five-part test to determine if a party's failure to disclose fits within either exception. S. States Rack & Fixture, Inc. v. Sherwin–Williams Co., 318 F.3d 592, 595 (4th Cir. 2003). A district court evaluating the propriety of Rule 37 exclusion should consider:

> (1) surprise to the opposing party, (2) ability to cure that surprise, (3) disruption of the trial or other instance where the evidence is being relied

>   upon, (4) importance of the evidence, and (5) the non-disclosing party's explanation for its failure to disclose.

Id. at 596. The first four elements relate to the harmlessness of nondisclosure; the fifth to substantial justification. Id. at 597. The non-disclosing party bears the burden of establishing that his failure to disclose is covered by one of the two exceptions. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014).

While the court has not received any argument from the parties on whether Dr. Spandorfer's testimony is that of a retained expert or hybrid witness, Holmes was required in either scenario to file an expert disclosure for him.[4] His failure to file such a disclosure triggers Rule 37 and allows the court to issue sanctions under that rule in its discretion. The parties likewise do not argue any of the five factors that weigh on the propriety of exclusion of expert testimony under Rule 37. However, after considering these factors, the court finds they decidedly favor exclusion.

First, Holmes's reliance on the undisclosed expert opinion of Dr. Spandorfer surely is a surprise to Maersk. The use of this expert opinion comes months after the July 15, 2021 deadline for Holmes's expert disclosures and after the December 4, 2021 discovery deadline. See ECF No. 10. Second, Holmes's failure to provide an expert disclosure for Dr. Spandorfer has inhibited Maersk's ability to prepare for trial. Expert disclosures are intended to facilitate trial preparation and reduce the amount of

---

[4] Moreover, as the court has noted, the party seeking to avoid producing a retained expert report bears the burden of demonstrating that the witness is a hybrid. Therefore, to the extent Holmes believed that Dr. Spandorfer's testimony was hybrid and not subject to the full reporting obligations, he was required to demonstrate that fact. Having failed to do so, the court is inclined to assume that the testimony is that of a retained expert and that Holmes was required to provide a retained expert written report satisfying the requirements of Rule 26(a)(2)(B).

13

guesswork in civil litigation. See Jacobsen v. Deseret Book Co., F.3d 936, 953 (10th Cir. 2002) (explaining that the purpose of Rule 26(a) expert reports is to set forth the substance of what the expert will say during his direct examination and thereby provide an opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."), Saudi, 427 F.3d at 278 ("A party that fails to provide [expert] disclosures unfairly inhibits its opponent's ability to properly prepare"). Although Maersk had the opportunity to depose Dr. Spandorfer, "deposition testimony, standing alone, is not automatically a substitute for expert disclosures." Turner v. Speedway LLC, 2015 WL 4392398, at *5 (S.D. W. Va. July 15, 2015); see Cohen v. United States, 100 Fed. Cl. 461, 471–74 (Fed. Cl. 2011) (holding that the plaintiff had not "met his burden to prove that his failure to disclose [the opinion of his expert witness] . . . was substantially justified or harmless" and precluding expert witness from testifying about a theory discussed at his deposition but not disclosed in an expert report); Musser v. Gentiva Health Servs., 356 F.3d 751, 757 (7th Cir. 2004) (holding that the plaintiff's treating physicians, disclosed as fact witnesses but not identified as experts, were precluded from offering any expert testimony at trial, even though the defendant had "an opportunity to depose th[e] [physicians] as to their opinions"). Had Holmes submitted his expert disclosure and report for Dr. Spandorfer, Maersk could have taken a second deposition, prepared a rebuttal expert, or taken other steps it considered necessary to oppose Dr. Spandorfer's expert testimony. Fed. R. Civ. P. 26(b)(4). While the court could allow more time for depositions and permit Maersk to file a new motion for summary judgment, see, e.g., Kotes v. Super Fresh Food Mkts., 157 F.R.D. 18, 21 (E.D. Pa. 1994), "it is not an abuse of discretion to conclude that the

additional costs to [the moving party] of preparing a new summary judgment motion and further delay in extending the trial date are not harmless," Musser, 356 F.3d at 759 (citing Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 616 (7th Cir. 2002) (concluding that an extension of discovery was harmful because it unreasonably burdened the defendant)).  Third, Dr. Spandorfer's expert testimony as to causation is crucial to both parties' case.  Causation is a necessary element of Holmes's negligence/gross negligence claims against Maersk, and Dr. Spandorfer's expert opinion is the only evidence Holmes offers to prove that his injuries were caused by his alleged exposure to the cow hides.  Fourth, Holmes has provided no excuse for the delay.  Moreover, the importance of this testimony diminishes any justification Holmes may have for failing to provide an expert disclosure and failing to even attempt to remedy this mistake.  Because the factors favor exclusion, the court finds that Holmes's failure to provide a timely expert disclosure precludes Holmes from relying on the same to defend against the instant motion for summary judgment.  Therefore, the court alternatively grants the motion for summary judgment on this ground as well.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 8, 2022
Charleston, South Carolina**